914 So.2d 642 (2005)
Louis STEMLEY, Plaintiff-Appellant,
v.
Charles FOTI, Jr., et al, Defendants-Appellees.
No. 40,379-CA.
Court of Appeal of Louisiana, Second Circuit.
October 26, 2005.
Rehearing Denied November 23, 2005.
*643 Louis Stemley, pro se.
William R. Coenen, Jr., Rayville, John Vito Quaglino, for Appellees.
Before GASKINS, PEATROSS & LOLLEY, JJ.
PEATROSS, J.
Plaintiff, Louis Stemley, appeals the dismissal of his tort action against the Orleans Parish Criminal Sheriff and the Warden of the Richland Parish Detention Center as abandoned. For the reasons set forth herein, we affirm the ruling of the trial court.

FACTS
Mr. Stemley is an inmate with the Louisiana Department of Public Safety and Corrections ("DPSC"). In 1998, he filed a petition in the Fifth Judicial District Court against Charles Foti, then the Criminal Sheriff of Orleans Parish, and Ray North, the warden of the Richland Parish Detention Center ("RPDC"). In his petition, Mr. Stemley claimed that, while incarcerated, he had been denied access to legal materials, transferred between prisons on the eve of his mother's funeral and denied timely access to health care. Mr. Stemley further alleged that, on September 3, 1998, he was harmed at RPDC due to indiscriminate spraying of mace by deputies attempting to break up a fight at the prison. Mr. Stemley was afforded pauper status by the court for the case sub judice.
Mr. Stemley subsequently amended his petition to add the following defendants: the Orleans Parish Sheriff's Department ("OPSD"); Mark Terrell, "legal service" at RPDC; Trey Stokes, chief of security at RPDC; David Stewart, nurse; and the insurers of the aforementioned defendants. His allegations against these (new) defendants included complaints about access to legal materials and health care as well as an allegation of having been maced in a second incident.
The OPSD filed an exception of venue and RPDC, Mr. North, Mr. Stokes and Mr. Stewart filed an answer and a variety of exceptions to Mr. Stemley's petitions including an exception of no cause of action. In 1999, Mr. Stemley filed interrogatories and a Motion to Transport himself to a scheduled hearing. In early 2000, Mr. Stemley filed a request for notice of judgment, a request to set the matter for trial and a request for a jury trial. Mr. North, Mr. Stokes and Mr. Stewart opposed his last request. In April 2000, Mr. North, Mr. Stokes and Mr. Stewart filed a motion for a pre-trial conference and for a hearing of their opposition to a jury trial. No one appeared at the hearing on the appointed date, so the motions were continued without date. Mr. Stemley filed a Motion to Recuse the trial judge on June 23, 2000, which the trial judge denied, citing the absence of justification for recusal.
The hearing on the motions and exceptions was reset for August 2000 and Mr. Stemley filed another motion requesting to be transported to the hearing; that hearing was later reset to October 2000. The court held a hearing on the defendants' exceptions on October 13, 2000. Thereafter, RPDC, Mr. North, Mr. Stokes and Mr. Stewart filed a memo in support of their exceptions and attached a portion of the operating agreement between the Richland Sheriff and the operator of RPDC, Bayou Correctional Corporation. Mr. Stemley then filed a motion demanding the entirety of this agreement. In *644 December 2000, Mr. Stemley filed a witness and exhibit list, an opposition to the pending exceptions and a pre-trial conference report. He further agreed to a bench trial.
In January 2001, Mr. Stemley filed another opposition to the still-pending motions and exceptions. There was a discovery dispute about an inmate report that was resolved against Mr. Stemley. On September 5, 2001, the trial court issued reasons for judgment concerning Charles Foti's exception of venue and concerning the pending exceptions. The court stated its intention to sustain the exception of venue and dismiss Mr. Foti as a party; the court also stated its intention to dismiss Mr. Stemley's claims against the RPDC and Mr. Stewart as well as a number of individual claims within his 46-paragraph petition. On September 25, 2001, the court signed a judgment generally sustaining the exceptions filed by the defendants with the exception of Mr. Stemley's claims concerning alleged physical abuse at the prison.
On October 11, 2001, Mr. Stemley filed an amended petition in an effort to cure some of the defects noted by the trial court concerning the original petition. He added several new defendants including Bayou Correctional Corporation, Richland Parish Law Enforcement District, Troy Thomas, Jr., Jody Rawls, James Rawls, II, David Watkins, Randy Wilhite, Gary Allen, Ricky Scott, Vic Swain and Charles Michael Johnson.[1] Mr. Stemley also filed a U.R.C.A. Rule 4-2 notice of intent to seek writs concerning the trial court's rulings; the trial court fixed November 1, 2001, as the return date and subsequently extended the date to 30 days from November 12, 2001, but Mr. Stemley made no filing in this court. On October 29, 2001, the defendants filed a Motion for Extension of Time to file an answer to Mr. Stemley's amended petition; the trial court granted them an additional 30 days in which to file an answer.
On November 21, 2001, the defendants filed an answer to Mr. Stemley's amended petition and included a variety of exceptions and defenses. After the filing of this answer, the only activity of any kind in the lawsuit that is reflected by filings in the record on appeal consisted of the following:
 June 24, 2002  Notice of change of address filed by counsel for the Orleans Sheriff;
 October 21, 2002  Notice from Mr. Stemley that he had been transferred to Phelps Correctional Center in DeQuincy, La;
 February 19, 2003  A letter from Mr. Stemley to the trial court judge stating:
Please take NOTICE that petitioner originally filed pleadings in this Honorable Court September 1998, Petition for Personal Injury. The last correspondence petitioner received was an order granting his Supplimental (sic) and Amending Petition. Petitioner has no desire to have his litigation dismissed due to failure to prosecute. Please advise if there has been any further action taken by this Court since the above action. If petitioner does not receive an answer to this NOTICE within ten (10) days he will conclude that prison officials are again obstructing his access to the courts. Mailed this 4th day of February, 2003.
On December 8, 2004, the defendants filed a motion seeking to have Mr. Stemley's lawsuit dismissed as abandoned. The motion included an affidavit from Mr. William Coenen, Jr., attorney for the defendants, *645 stating that no step had been taken in the prosecution or defense of the case for three years after the November 21, 2001 answer by the defendants. The court granted the motion the same day and ordered that the motion and order be served upon Mr. Stemley at Phelps Correctional Center by the Sheriff of Richland Parish. On December 10, 2004, the clerk of the district court mailed notice of the ruling to the Sheriff of Calcasieu Parish (among others), asking the sheriff to serve Mr. Stemley at Phelps Correctional Center. That notice was returned to the clerk of the district court, evidently by the Calcasieu Parish Sheriff, with the notation "Phelps not in Calcasieu Parish. Thx, Civil."
Mr. Stemley wrote the district court a letter in February 2005 asking about the status of his case and was at that time informally notified that his lawsuit had been dismissed. In April 2005, he notified the clerk of the district court that he had not yet received formal notice of the aforementioned dismissal. At the same time, he filed a motion for appeal from the judgment dismissing his lawsuit. The case is now before this court on appeal. The record on appeal was supplemented on August 16, 2005, with proof of service upon Mr. Stemley of the notice of dismissal on June 3, 2005.[2]

DISCUSSION

Assignment of Error One (verbatim): The trial court erred on granting Defendants' Motion for Abandonment pursuant to Louisiana Code of Civil Procedure, Article 561.
Abandonment is governed by La. C.C.P. art. 561, which provides:
A. (1) An action is abandoned when the parties fail to take any step in its prosecution or defense in the trial court for a period of three years....
(2) This provision shall be operative without formal order, but, on ex parte motion of any party or other interested person by affidavit which provides that no step has been taken for a period of three years in the prosecution or defense of the action, the trial court shall enter a formal order of dismissal as of the date of its abandonment. The sheriff shall serve the order in the manner provided in Article 1314, and shall execute a return pursuant to Article 1292.
(3) A motion to set aside a dismissal may be made only within thirty days of the date of the sheriff's service of the order of dismissal. If the trial court denies a timely motion to set aside the dismissal, the clerk of court shall give notice of the order of denial pursuant to Article 1913(A) and shall file a certificate pursuant to Article 1913(D).
(4) An appeal of an order of dismissal may be taken only within sixty days of the date of the sheriff's service of the order of dismissal. An appeal of an order of denial may be taken only within sixty days of the date of the clerk's mailing of the order of denial.
B. Any formal discovery as authorized by this Code and served on all parties whether or not filed of record, including the taking of a deposition with or without formal notice, shall be deemed to be a step in the prosecution or defense of an action.
C. An appeal is abandoned when the parties fail to take any step in its prosecution *646 or disposition for the period provided in the rules of the appellate court.
Mr. Stemley did not file a Motion to Set Aside the Judgment of Dismissal, under La. C.C.P. art. 561(A)(3), at any point. Given the delay in service of the order of dismissal, however, we consider Mr. Stemley's Motion for Appeal to be timely.
La. C.C.P. art. 561 sets forth three requirements: (1) that a party take some "step" in the prosecution or defense of the action; (2) that it be done in the trial court on the record of the suit, with the exception of formal discovery; and (3) that the step be taken within three years of the last step taken by either party. James v. Formosa Plastics Corp. of Louisiana, 01-2056 (La.4/3/02), 813 So.2d 335; Bryant v. City of Monroe, 37,811 (La.App.2d Cir.10/29/03), 859 So.2d 907.
As noted, the only activity in the lawsuit between the date of the defendants' answer consisted of two changes of address[3] and one notice from Mr. Stemley that he did not wish for his case to be dismissed as abandoned.
The notice/filing asserted by Mr. Stemley which he argues amounts to a "step" in the prosecution of the case is his February 19, 2003 letter to the district court expressing that he "has no desire to have his litigation dismissed due to failure to prosecute." Such a notice is unusual and, based on our review, appears to be unique in Louisiana jurisprudence. The plaintiff's intention to take a step in the prosecution of his claim without a step actually being taken is insufficient. Sullivan v. Cabral, 32,454 (La.App.2d Cir.10/27/99), 745 So.2d 791, writ denied, 99-3324 (La.1/28/00), 753 So.2d 837. The defendants cite a bevy of jurisprudence standing for the proposition that such a notice could never amount to a "step" in the prosecution of a case. They state that a letter rejecting abandonment should be ineffective because such notices could indefinitely prolong litigation without any progress being made toward a final judgment. We agree.
Our review of the record in the case sub judice reflects that this suit was abandoned by Mr. Stemley. In Clark v. State Farm Mut. Auto. Ins. Co., 00-3010 (La.5/15/01), 785 So.2d 779, the supreme court observed:
Abandonment is not a punitive concept; rather, it (sic) a balancing concept. Abandonment balances two equally sound, competing policy considerations: "on the one hand, the desire to see every litigant have his day in court, and not to lose same by some technical carelessness or unavoidable delay; on the other hand, the legislative purpose that suits, once filed, should not indefinitely linger, preserving stale claims from the normal extinguishing operation of prescription."... The latter policy consideration parallels those served by prescriptive statutes-promoting legal finality, barring stale claims, and preventing prejudice to defendants.... More precisely, the latter prescriptive purpose on which abandonment is based promotes "the legislative intent and judicial policy of finality, requiring that suits not be permitted to linger indefinitely, that the legal process be expedited where possible, and that abandoned cases be removed from crowded dockets." 1 Judge Steven R. Plotkin, West Practice Group: Louisiana Civil Procedure 359 (2001). Given *647 the balancing function served by abandonment, "Louisiana's jurisprudence tends to be inconsistent; no bright lines exist." Id. (Emphasis added.) (Citations omitted, emphasis in original.)
Similarly, La. C.C.P. art. 561(A)(3), provides a procedure by which a litigant whose case has been dismissed as abandoned may return to the district court and argue why the order of abandonment was in error.
In Sullivan, supra, this court stated:
An action is abandoned when the parties fail to take any step in its prosecution or defense in the trial court for a period of three years. Any formal discovery authorized by the Code of Civil Procedure and served on all parties, whether or not filed of record, shall be deemed to be a step in the prosecution of an action.

...
Article 561 was not meant to dismiss those cases in which a plaintiff has clearly demonstrated before the court during the prescribed period that she does not intend to abandon the action. However, the plaintiff's intention to take a step in the prosecution of her claim without a step actually being taken is insufficient.... (Citations omitted.) (Emphasis ours.)
Similarly, in Morgan v. Hopkins, 36,506 (La.App.2d Cir.10/23/02), 830 So.2d 459, writ denied, 02-2866 (La.1/31/03), 836 So.2d 71, this court held that:
The law is clear that a motion to withdraw, enroll or to substitute counsel is not considered a formal "step" in the prosecution of suit as contemplated by La. C.C.P. art. 561. Brown v. City of Shreveport Urban Development, 34,657 (La.App.2d Cir.5/9/01), 786 So.2d 253; Theriot v. State, DOTD, 01-1420 (La. App. 1st Cir.9/25/01), 809 So.2d 279.
Following this line of jurisprudence, Mr. Stemley's February 19, 2003 letter to the trial judge did not constitute a formal "step" sufficient to survive the defendants' abandonment challenge. Representing himself, Mr. Stemley filed a motion to set the case for trial early in the year 2000 and conducted discovery against the defendants at that time. Over the next year, Mr. Stemley actively pursued his case, filing several motions and attending a hearing on various exceptions filed by the defendants. As stated, however, between November 21, 2001, and the defendants filing a motion for abandonment on December 8, 2004, he took no formal action with the court. In the absence of any other, formal motion or petition with the court, we decline to hold that a letter by a party denying an intent to abandon constitutes a "step" sufficient to interrupt the abandonment period.
Finally, we note that there is some indication by Mr. Stemley that part of the delay experienced in this case was due to circumstances beyond his control  i.e., his imprisonment. Our review of the record reveals that this was not the case. In Jones v. Phelps, 95-0607 (La.App. 1st Cir.11/9/95), 665 So.2d 30, writ denied, 95-2907 (La.2/2/96), 666 So.2d 1104, the court stated:
Two exceptions to the rule of abandonment have been recognized by the courts: (1) when the failure to prosecute was caused by circumstances beyond the plaintiff's control and (2) when the defendant waived his right to plead abandonment by taking action in the case inconsistent with an intent to treat the case as abandoned.
The phrase "circumstances beyond the plaintiff's control" in the first exception contemplates events making it impossible for the litigant to act in his own behalf to take the requisite steps (e.g., parties in military service or confined to mental institutions). Jones argued that his incarceration in a Texas institution *648 from 1981 to 1989 and the withdrawal of his counsel in 1988 were circumstances beyond his control which stalled the lawsuit and prevented him from prosecuting the matter further. The fact that Jones may have been incarcerated for a period of time while this case was pending or may have made unsuccessful attempts at engaging new counsel did not create a legal impediment which kept him from hastening the matter to judgment. At any time, Jones could have taken appropriate steps to move the litigation forward, but failed to do so. (Citations omitted.) (Emphasis ours.)
Mr. Stemley asserts that he gave pleadings to prison officials dated April 4, 2004, July 30, 2004, and February 17, 2005; however our review concludes that the April and July 2004 pleadings are not present in the record and the February 2005 pleadings were filed beyond the abandonment period.[4] Accordingly, based on this record and the applicable jurisprudence, we cannot say that Mr. Stemley's imprisonment created a legal impediment to his pursuit of this matter.

CONCLUSION
For the reasons set forth herein, we affirm the judgment of the district court dismissing this case as abandoned.
AFFIRMED.

APPLICATION FOR REHEARING
Before BROWN, WILLIAMS, GASKINS, PEATROSS, and LOLLEY, JJ.
Rehearing denied.
NOTES
[1] The individual defendants are all correctional officers at RPDC.
[2] In his original brief, Mr. Stemley includes a May 12, 2005 Motion to Annul the trial court's judgment dismissing his lawsuit; however, that document is not included in the record on appeal and, thus, may not be considered, per Haulcy v. Saint Gobain Containers, 39,405 (La.App.2d Cir.3/9/05), 895 So.2d 803.
[3] The changes of address are clearly not steps in the prosecution of the action. See, e.g., Causey v. Caterpillar Machinery Corp., 02-0746 (La.App. 4th Cir.6/26/02), 822 So.2d 188. Even the substitution of counsel is not a step in the prosecution of the lawsuit. See, e.g., Chevron Oil Co. v. Traigle, 436 So.2d 530 (La.1983).
[4] Mr. Stemley appears to confuse the February 17, 2005 filing with one he actually made on February 26, 2005 (which is also outside the abandonment tolling period). Similarly, the July 2004 pleading, attached as "Appendix A" to his brief, appears to be the same notice/letter he filed on February 19, 2003.